IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LAURA S. McALISTER,**

       **Plaintiff,**

vs.                                                             Civ. No. 10-728 JH/WDS

**Sergeant GLENN TRUJILLO, Officer
WAYNE HARVEY, Officer MARVIN GOKE,
Police officers of the New Mexico State Police,
in Their Individual and Official capacities,**

**and**

**Captain LARRY HALL, a law enforcement
officer employed by the New Mexico State
Police, Motor Transportation Division, in his
Individual and Official capacity,**

       **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and/or for Qualified Immunity* [Doc. No. 9]. In considering the motion, the Court has reviewed the amended complaint, the briefs filed by counsel, and the applicable legal authorities. Having done so, the Court concludes that the motion should be granted in part and denied in part as further described herein.

## LEGAL STANDARD

In evaluating a motion to dismiss for failure to state a claim, this Court must "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view the facts in the light most favorable to the nonmoving party" to determine whether the complaint sets forth plausible

grounds to believe the claims asserted will find evidentiary support. *Archuleta v. Wagner*, 523 F.3d 1278, 1282–83 (10th Cir. 2008) (quotation and alteration omitted). *See also Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010) ("Well-pleaded factual allegations are taken as true, but a court must also consider whether they plausibly give rise to an entitlement to relief.") (internal quotation marks omitted). The same is true for a motion to dismiss on grounds of qualified immunity. *Archuleta*, 523 F.3d at 1282–83. However, the Court must conduct this review in light of the unique nature of qualified immunity, which imposes a "heavy two-part burden" on a plaintiff: "First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id*. at 1283 (quotation omitted). *See Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (once a defendant pleads qualified immunity, the plaintiff must meet his two-part burden).

## **FACTS**

The facts summarized here are taken, as they must be when qualified immunity is raised in connection with a motion to dismiss, from the four corners of the amended complaint. *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).

At all relevant times, Plaintiff Laura McAlister was an enforcement officer employed by the New Mexico Motor Transportation Division ("MTD"). Her duties included stopping drivers of commercial vehicles who were speeding or suspected of other crimes pertaining to commercial transportation, as well as investigating accidents involving commercial vehicles. Defendants Glen Trujillo, Wayne Harvey and Marvin Goke were police officers employed by the New Mexico State Police, while Defendant Larry Hall, an officer employed by MTD, was McAlister's supervisor. McAlister has a female cousin who, a short time prior to the events described in the amended

complaint, had filed a domestic violence charge against her boyfriend, Officer Michael Garcia, a member of the New Mexico State Police. The state police had initiated an internal affairs investigation into the boyfriend, whose uncle was a captain with the state police. Since that time, both McAlister and her cousin had observed New Mexico State Police officers following them, which they believed was an attempt to intimidate McAlister's cousin for filing a domestic violence claim against one of their fellow officers.

On August 31, 2008, at approximately 10:40 p.m., McAlister was off duty and was at home when she received a phone call from her female cousin, who stated that she was on her way to McAlister's home but was being followed by a New Mexico State Police officer. The cousin described the identification marking on the patrol car, which McAlister recognized as belonging to Defendant Goke. A few hours later, at approximately 1:30 a.m.[1] on September 1, 2008, McAlister received a phone call from her supervisor, Defendant Hall, informing her that there had been a fatal accident involving a commercial vehicle on Interstate 25 near Los Lunas, New Mexico. Hall asked McAlister to go to the scene, and she did so. Also present at the accident site were Defendants Trujillo, Harvey and Goke, though McAlister did not speak to either Harvey or Goke while she was at the scene. Instead, McAlister spoke to the truck driver involved in the accident and inspected vehicles. Then she went to her patrol car to write a report and fill out required forms. While she was doing that, Trujillo approached McAlister and told her that Harvey and Goke claimed to have smelled alcohol on McAlister's breath. Sergeant Trujillo then stated that he might have smelled alcohol on McAlister as he was standing there. These allegations were false, as McAlister had not

---

[1] The amended complaint says that the phone call occurred at 1:30 p.m. "the same night." Doc. No. 2 at ¶ 14. From the context, it is clear that this is a typographical error, and that the call came in at 1:30 a.m.

3

been drinking that night and had not spoken to either Harvey or Goke. She told Trujillo that, and she offered to take a field sobriety test. Trujillo declined the offer and walked away, telling McAlister to stay with her patrol car. McAlister complied, and Trujillo returned a short time later. He ordered McAlister to get out of her patrol car and give him the keys, and she did so. Trujillo placed her in his police car and took her to the State Police Office in Los Lunas. During the drive, Trujillo asked McAlister questions about her personal life, which she took to be an inquiry about her cousin's domestic violence problems with Officer Garcia. After mentioning the incident with her cousin, McAlister told Trujillo that she did not want to talk about personal matters any more.

When they arrived at the police station in Los Lunas, Trujillo ordered McAlister to go to the officers' area. McAlister did so, believing she was not free to leave the building. Trujillo sat in front of her, and then Harvey entered and sat nearby. Trujillo told McAlister that according to "our policy" she must take a breathylizer test. McAlister was fearful that she was being set up to be charged with a crime or for a disciplinary matter, and she asked what the consequences would be if she refused to take the test. Trujillo denied McAlister's request to read the policy to which he was referring. Convinced that something was wrong, McAlister refused to take the breathylizer test or to answer further questions. Instead, she asked to call her supervisor, Defendant Hall. McAlister talked to Hall on the telephone and described the situation to him, but he ordered her to take the breath test. At this point, it had been over two hours since Trujillo had first approached McAlister.

Soon thereafter, Hall and another MTD officer arrived. They took McAlister to a closed room. Hall produced a tape recorder and notified McAlister that she was being recorded. Again Hall directed McAlister to take the breathylizer test, and he told her that if she did not take the test she would be fired from her job. McAlister refused once more, believing that because she had not been advised of her constitutional rights, that she was being set up. As a result of the foregoing

4

events, and because she was made the subject of an internal affairs investigation that she believed ruined her career prospects, McAlister eventually resigned from MTD, though the amended complaint does not state when she did so.

In her amended complaint, McAlister asserts that Defendants violated her constitutional rights, including her rights to familial association, equal protection, and due process, as well has her right to be free from unreasonable seizures.  She also alleges that Defendants are liable for tortious interference with her rights under the collective bargaining agreement and constructive discharge.  Finally, her complaint contains conclusory allegations that there was publication in the community of matters involving her alleged detention, arrest, and constructive termination.  Viewed in the light most favorable to McAlister, these allegations can be construed as an attempt to assert a claim of defamation as well.  In the motion currently before the Court, Defendants move to dismiss on two alternate grounds—failure to state a claim and qualified immunity.

## DISCUSSION

### I.  CONSTITUTIONAL CLAIMS

#### A.  Official Capacity Claims Against All Defendants

The Supreme Court has recognized that suing individual defendants in their official capacities under § 1983 is a way of pleading an action against the government entity they represent. *See Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018 (1978); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).  "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300 (1986).  As a result, a plaintiff alleging a claim against a defendant in his official

5

capacity must "identify a specific deficiency" in a government policy or custom that was obvious and "closely related" to his injury. *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999). In order to properly plead facts to support such a claim, the plaintiff must allege that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury. *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989).

In their motion, Defendants ask the Court to dismiss the claims against them in their official capacities because McAlister has failed to allege that her injuries were caused by an official policy or custom of the State of New Mexico. The Court will grant this motion for two reasons. First, McAlister failed to respond to this argument, essentially conceding the point. Second, a close review of the amended complaint reveals that McAlister has not alleged the existence of an official policy or custom that was the moving force behind her injury. Thus, the Court will dismiss the §1983 claims against Defendants in their official capacities.

### B. Right to Equal Protection

Equal protection "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985). "The allegation that a plaintiff was treated differently from those similarly situated is an essential element of an equal protection action. . . ." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998) (affirming dismissal of plaintiff's equal protection claim where plaintiff failed to assert how he was treated differently from others similarly situated). *See also Jennings v. City of Stillwater*, 383 F.3d 1199, 1213 (10th Cir. 2004) (dismissing plaintiff's equal protection claim in part because "she failed to make an adequate showing that similarly situated persons were treated differently").

Here, McAlister does not allege any fact showing that she was treated differently than any

other similarly situated person or persons. Accordingly, her equal protection claim will be dismissed for failure to state a claim. Having reached that conclusion, the Court need not determine whether or not the defendants are entitled to qualified immunity on this cause of action.

### C. Right to Procedural Due Process

It is not entirely clear that McAlister intended to assert a procedural due process claim in her amended complaint. However, assuming that the amended complaint contains such a claim, it should be dismissed under Rule 12(b)(6).

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient[.]" *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989) (internal citations omitted), *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293 (1995)). Here, McAlister has neither pled nor argued that she had a property interest in her job with MTD. However, the Court need not decide whether or not McAlister had a property interest in her job, because even if she did, she cannot state a claim for relief against the individual defendants for the violation of her procedural due process rights. Her claim, if any, is against her employer, the State of New Mexico, not the police officers she has named as defendants. *See Muller v. Culbertson*, 408 Fed. Appx. 194, 196, 2011WL304484 (10th Cir. Feb. 1, 2011) (unpublished) (in a case in which employment was terminated, dismissing procedural due process claim brought against an entity other than plaintiff's employer). Further, even if she had managed to state a claim for violation of this constitutional right, McAlister has not met her burden to show that Defendants are not entitled to qualified immunity by demonstrating that any Defendant's actions violated her procedural due process rights under clearly established law.

### D.     Right to Freedom of Association (Substantive Due Process)

The Supreme Court has explained that the Constitution protects two distinct forms of free association. The first, freedom of expressive association, arises from the First Amendment and ensures the right to associate for the purpose of engaging in activities protected by the First Amendment. *See Roberts v. United States Jaycees*, 468 U.S. 609, 617-18, 104 S.Ct. 3244 (1984). Although she makes reference to her First Amendment rights, it does not appear that McAlister is asserting a violation of this form of free association, as she has not alleged that she participated in any speech protected by the First Amendment. The second, freedom of intimate association, protects the right "to enter into and maintain certain intimate human relationships." *Roberts*, 468 U.S. at 617, 104 S.Ct. 3244. The freedom of intimate association, or familial association, "receives protection as a fundamental element of personal liberty," *id*. at 618, 104 S.Ct. 3244, and as such is protected by the due process clauses. *See Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993) ("The freedom of intimate association is a substantive due process right, as is its subset, the familial right of association.").

In *Trujillo v. Board of Cnty. Com'rs of Santa Fe Cnty*, 768 F.2d 1186, 1190 (10th Cir. 1985), the Tenth Circuit "conclude[d] that an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983." In *Griffin*, the court cited *Trujillo* for the principle that

> [n]ot every statement or act that results in an interference with the rights of intimate association is actionable. Rather, to rise to the level of a constitutional claim, the defendant must direct his or her statements or conduct at the intimate relationship with knowledge that the statements or conduct will adversely affect that relationship.

*Griffin*, 983 F.2d at 1548 (emphasis in original). Similarly, in *J.B. v. Washington County*, 127 F.3d 919 (10th Cir. 1997), while recognizing the Fourteenth Amendment as the constitutional wellspring

8

of familial association rights, *see id.* at 927, the Tenth Circuit continued to require a showing of direction or intent by the person who allegedly interfered with the plaintiff's right to familial association. *Id.* at 927-28.

First, it appears that McAlister has not properly alleged a violation of her right to familial association. McAlister has alleged that by their actions, Defendants intended to interfere with her familial relationship with her cousin. However, as Defendants correctly point out, McAlister has failed to allege that Defendants actually caused any such interference—that is, McAlister does not allege that she has suffered any adverse effect on the relationship between her and her cousin. Thus, she has failed to state a claim for violation of her right to intimate association.

Second, assuming merely for the sake of argument that McAlister had successfully alleged a violation of her right to familial association, the question remains as to whether Defendants violated clearly established law by their actions. As discussed above, the burden is on McAlister to make this showing, and she has failed to do so. Specifically, she has failed to come forward with clearly established law holding that the relationship between adult cousins who do not live together is one that falls under the protection of the due process clause.[2] Second, McAlister has not come forward with clearly established law holding that Defendants' actions, under the circumstances here, would constitute a violation of McAlister's right to familial association. For example, missing from McAlister's response brief are any cases which illustrate the nature of the interference with familial relationships that would give notice to these Defendants that their alleged actions—wrongfully

---

[2] In *Trujillo*, the Tenth Circuit concluded that the relationships protected by the right to familial association extended beyond that of parent and minor child. However, in finding that the plaintiffs' relationships with their adult son and brother were protected, the court stopped far short of finding that the relationship between non-cohabitating adult cousins was protected. *Trujillo*, 768 F.2d at 1188-89.

9

accusing McAlister of having alcohol on her breath and requiring her to take a breath test in order to retain her state employment as a way to intimidate McAlister's cousin—violated her constitutional right to be free from interference with her familial relationships. Accordingly, the Court will dismiss this claim.

### E. Right to Freedom from Unreasonable Seizure

McAlister alleges that Defendants detained her without reasonable suspicion and arrested her without probable cause in violation of the Fourth Amendment. Doc. No. 2 at ¶ 41. As a preliminary matter, the Court notes that McAlister has not alleged any facts upon which she can base a Fourth Amendment claim against either Harvey or Goke. McAlister's only allegations against Goke are that he followed her cousin in his police car, and that he falsely told Trujillo that he smelled alcohol on McAlister's breath at the scene of the accident. Similarly, McAlister's sole allegations against Harvey are that he falsely told Trujillo that he smelled alcohol on McAlister's breath at the scene of the accident, and that Harvey sat near her and Trujillo in the officer's area of the Los Lunas police station. McAlister does not allege that either Harvey or Goke detained her or interfered with her liberty in any way. Thus, her Fourth Amendment claims against Defendants Harvey and Goke will be dismissed for failure to state a claim.

The question of whether McAlister has alleged sufficient facts to state a claim against Defendants Trujillo and Hall for an improper detention or arrest is more complicated, as it is not entirely clear from the allegations in the amended complaint whether she was actually arrested, or whether Trujillo and Hall interacted with her on an administrative basis as an employee. Indeed, McAlister herself acknowledges that she was unsure whether she had been detained for a criminal investigation into a possible DUI charge or whether the events of that evening were part of an administrative proceeding in her capacity as an employee. Several facts alleged by McAlister

support the inference that she had been first detained, then arrested, within the meaning of the Fourth Amendment. First, Trujillo, who was neither McAlister's supervisor nor even a member of the same law enforcement organization, asked her for the keys to her patrol car and drove her to the police station in his own police vehicle. The fact that Trujillo had no supervisory authority over McAlister tends to weaken a suggestion that this was merely an administrative, employment-related event. Second, although Trujillo initially questioned McAlister in the officers' area, he later moved her to a private room, further suggesting that McAlister was not free to leave. Third, though Trujillo claimed that the breath test was required pursuant to an employment policy, he refused to show the policy to McAlister. McAlister alleged that she did not feel as though she was free to leave, though if she believed she could be fired for departing the police station, that does not necessarily transform the event into an arrest. Finally, no one read McAlister her constitutional rights, a fact that could weigh in favor of either an employment-related administrative event or a Fourth Amendment violation, if McAlister had indeed been arrested. Though it presents a very close question, the Court concludes that, viewed in the light most favorable to McAlister, she has alleged sufficient facts to support a claim that she was first detained, and then arrested, within the meaning of the Fourth Amendment.

    Next, the Court must determine whether McAlister has alleged adequate facts to support a claim that her arrest was without probable cause. Here, she alleges that Trujillo refused to perform a field sobriety test on her, and that instead he detained or arrested her based upon reports from Goke and Harvey that they smelled alcohol on her, as well as his own stated observation to the same effect. McAlister alleges that these observations had to be false because she had not been drinking, and because she had not spoken to Harvey or Goke that evening. She alleges that she relayed that information to Trujillo. Further, although she does not expressly allege in her complaint that

11

Trujillo knew that Harvey and Goke were lying, or that he himself was lying, she implies as much from her allegations that she had not been drinking, had not spoken to Harvey or Goke, and that various State Police Officers were attempting to intimidate her and her cousin as a result of her cousin's domestic violence complaint against a fellow State Police officer. Typically, an officer is entitled to rely upon information from fellow officers when making a probable cause determination. *Oliver v. Woods*, 209 F.3d 1179, 1190 (10th Cir. 2000) ("Police officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable suspicion to justify an investigative detention . . ."). However, in obtaining information to support probable cause, an officer may not rely upon information that he knows to be false. *See Hinchman v. Moore*, 312 F.3d 198, 205-06 (6th Cir. 2002) ("Falsifying facts to establish probable cause to arrest and prosecute an innocent person is of course patently unconstitutional"). As this is a motion to dismiss, the Court must view the alleged facts in the light most favorable to the plaintiff. Here, McAlister has alleged facts that, if true, would support her claim that Trujillo detained her on suspicion of DUI even though he knew that she had not been drinking that night. The Court concludes that at this stage of the litigation McAlister has alleged sufficient facts to support a claim of arrest without probable cause.

Finally, the Court concludes that at the time of the events of this case, the law in the Tenth Circuit was clearly established that an officer may not detain a citizen without reasonable suspicion or arrest a suspect without probable cause. Accordingly, at this stage of the litigation the Court will deny the motion to dismiss the Fourth Amendment claims against Trujillo and Hall on qualified immunity grounds.

### F.     False Arrest

In her response to the motion to dismiss, McAlister for the first time mentions that she is

asserting a Fourth Amendment claim for false arrest.  To maintain a malicious prosecution, false arrest, or false imprisonment claim under § 1983, plaintiffs must demonstrate the elements of a common law claim and show that their Fourth Amendment right to be free from unreasonable search and seizure has been violated. *See Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir.1996).  "The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so.  A false arrest is merely one way of committing false imprisonment." *Santillo v. New Mexico Dept. of Pub. Safety*, 2007-NMCA-159, ¶ 12, 143 N.M. 84 (Ct. App. 2007) (internal citations omitted).  "An officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." *Id.*

As explained above, McAlister has alleged facts which, if true, would support the inference that Trujillo confined her without her consent and without probable cause.  Accordingly, the Court will not dismiss the claim at this stage of the litigation, although Defendants are of course free to raise the issue again on summary judgment.

## II.     INTERFERENCE WITH CONTRACTUAL RIGHTS

Defendants move to dismiss McAlister's state common law claim for tortious interference with her rights under the collective bargaining agreement.  As grounds for their motion, Defendants point out that the New Mexico Tort Claims Act ("NMTCA"), NMSA 1978, § 41-4-1 et seq., does not waive immunity for tortious interference with contractual relations.  In response, McAlister argues that § 41-4-12, which addresses the immunity of law enforcement officers, waives Defendants' immunity in this case.  That section provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault,

13

> battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

This section waives officers' immunity for violation of property rights as well as constitutional rights. McAlister reasons that an employment contract is a property right, the violation of which is waived by this section. However, as Defendants correctly point out, McAlister's interpretation of the NMTCA is barred by the New Mexico Court of Appeals' decision in *Silva v. Town of Springer*, in which it held that the statute contains no waiver of immunity for tortious interference with contract. 121 N.M. 428, 435, 912 P.2d 304, 311 (Ct. App. 1996) ("Appellants have failed to show that the acts of Appellees fell within a recognized exception to the immunity granted to public officers under the Tort Claims Act.") (citing *Caillouette v. Hercules, Inc*., 113 N.M. 492, 497, 827 P.2d 1306, 1311 (Ct. App. 1992) (immunity not waived unless tort complained of falls within specifically recognized exception to Tort Claims Act). Thus, Defendants cannot be held liable on McAlister's tortious interference with contract claim, and it will be dismissed with prejudice under Rule 12(b)(6).

### III.   CONSTRUCTIVE DISCHARGE

"Constructive discharge is not an independent cause of action, such as a tort or a breach of contract. Instead, constructive discharge is a doctrine that permits an employee to recast a resignation as a de facto firing, depending on the circumstances surrounding the employment relationship and the employee's departure." *Gormley v. Coca-Cola Enters*., 2005-NMSC-003 at ¶ 9, 137 N.M. 192 (2005). An employee must allege facts sufficient to find that the employer made

working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign. *Potts v. Davis Cnty.*, 551 F.3d 1188, 1194 (10th Cir. 2009). "Essentially, a plaintiff must show that she had no other choice but to quit." *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997) (quoted authority omitted). "The bar is quite high" for proving constructive discharge. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002). The concept of constructive discharge exists in many contexts, whether it be Title VII discrimination, *Fischer v. Forestwood Co.*, 525 F.3d 972, 978-82 (10th Cir. 2008), violation of procedural due process rights, *Lauck v. Campbell Cnty*, 627 F.3d 805, 812-13 (10th Cir. 2010), or the New Mexico state law tort of retaliatory discharge in violation of public policy. *Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶¶ 39-52, 143 N.M. 506 (Ct. App. 2007). All three of these types of constructive discharge claims share one thing in common: they must be brought against the employer as the entity responsible for discharging the plaintiff from his or her employment. Here, McAlister has not sued her former employer, the State of New Mexico, but only the individual defendants, none of whom is her employer who can be held liable for the termination of her job with MTD. Accordingly, McAlister's constructive discharge claim will be dismissed under Rule 12(b)(6).

## IV.   DEFAMATION

Under New Mexico law, the elements of defamation are "a defamatory communication, published by the defendant, to a third person, of an asserted fact, of and concerning the plaintiff, and proximately causing actual injury to the plaintiff." Here, McAlister alleges that Defendants' actions "resulted in publication of the matters of her wrongful detention, arrest, and constructive termination in the professional and local community where she worked and lived, and has resulted in wrongful loss of professional and personal reputation." Doc. No. 2 at ¶ 44. *See also id.* at ¶ 38, 47. As

Defendants correctly point out, while McAlister alleges that statements about her were publicized, she does not allege that any of the Defendants engaged in the publication of any defamatory statements of asserted facts. She also does not allege the identities of any third persons to whom the alleged publications were made. Thus, to the extent that McAlister intended to assert a common law tort claim for defamation, it will be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED** that *Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and/or for Qualified Immunity* [Doc. No. 9] is **GRANTED IN PART**, and Plaintiff's claims against all Defendants for violation of her rights to procedural and substantive due process and equal protection, as well as her claims for tortious interference with contractual relations, constructive discharge and defamation, are **DISMISSED**. Similarly, Plaintiff's Fourth Amendment unreasonable seizure and false arrest claims against Defendants Harvey and Goke are **DISMISSED**. Defendants' motion is **DENIED IN PART** as to Plaintiff's Section 1983 false arrest and unreasonable seizure claims against Defendants Trujillo and Hall.

_____
**UNITED STATES DISTRICT JUDGE**